UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

LUIS CELADO,

               Defendant.

------------------------------------X

08 Cr. 1114 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

On September 10, 2010, Luis Celado, ("Celado" or "Defendant") pleaded guilty to one count of conspiracy to commit Hobbs Act robberies, in violation of 18 U.S.C. § 1951. For the reasons set forth below, Celado will be sentenced to 36 months' imprisonment to be followed by 2 years' supervised release. Defendant will be required to make full restitution to the victims in an amount to be specified by the Court at sentencing or thereafter. Defendant will also be required to pay a special assessment of $100.

1

## Prior Proceedings

On February 24, 2010, Indictment S1 08 CR 1114 (RWS) was filed in the Southern District of New York.

Count 1 charges that from at least October 2005, through October 2006, in the Southern District of New York and elsewhere, Celado, a/k/a "Danny," Jose Robles ("Robles"), and Jose Rodriguez, a/k/a/ "Aneudi," ("Rodriguez"), and others conspired to rob, as that term is defined in 18 U.S.C. § 1951(b)(1), various businesses engaged in interstate commerce, including Radio Shack stores and a gas station in the Bronx, New York, in violation of 18 U.S.C. § 1951.

Count 2 charges that on October 15, 2005, in the Southern District of New York, Celado, Robles, and one or more others robbed a Radio Shack store in the Bronx, New York, in violation of 18 U.S.C. § 1951 & 2.

Count 3 charges that on November 15, 2005, in the Southern District of New York, Celado, Robles, and one or more others robbed a Radio Shack store in the Bronx, New York, in violation of 18 U.S.C. § 1951 & 2.

Count 4 charges that on October 2, 2006, in the Southern District of New York, Robles, Rodriguez, and one or more others robbed two employees while they were transporting the proceeds of the gas station where they worked in the Bronx, New York, in violation of 18 U.S.C. § 1951 & 2.

Count 5 charges that on October 15, 2005, in the Southern District of New York, Celado and Robles brandished a firearm during the robbery of a Radio Shack store in the Bronx, New York, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) & 2.

Count 6 charges that on November 15, 2005, in the Southern District of New York, Celado and Robles brandished a firearm during the robbery of a Radio Shack store in the Bronx, New York, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), 924(c)(1)(c)(i) & 2.

On September 10, 2010, Defendant allocuted to Count 1 only, pursuant to a plea agreement, before the Honorable Theodore H. Katz. This plea was accepted by the Honorable Robert W. Sweet on October 5, 2010.

3

The Plea agreement, dated August 15, 2010, stipulates the following:

- Since Count 1 charges a conspiracy to commit more than one offense – namely, the three Hobbs Act robberies outlined as overt acts – Count 1 shall be treated as though the defendant had been convicted on a separate count of conspiracy for each offense that he conspired to commit, pursuant to §1B1.2(d).

- A grouping analysis, pursuant to § 3D1.1, is applicable. Accordingly, the offense level for each individual overt act is calculated.

- Group 1: Pursuant to § 2B3.1(a), the base offense level for Overt Act 1 is 20; since a dangerous weapon was brandished during the commission of the robbery, pursuant to § 2B3.1(b)(2)(C), a five-level increase is warranted; and since a victim sustained a bodily injury during the commission of the robbery, pursuant to § 2B3.1(b)(3)(A), a two-level increase is warranted.

- In accordance with the above, the total applicable Guidelines offense level for Group 1 is 27.

- Group 2: Pursuant to § 2B3.1(a), the base offense level for Overt Act 2 is 20; since a dangerous weapon was brandished during the commission of the robbery, pursuant to §2B3.1(b)(2)(C), a five-level increase is warranted; since a person was restrained to facilitate the commission of the robbery, pursuant to § 2B3.1(b)(4)(B), a two-level increase is warranted; and since the offense caused a loss of more than $50,000, but not more than $250,000, pursuant to §2B3.1(b)(7)(C), a two-level increase is warranted.

- In accordance with the above, the total applicable Guidelines offense level for Group 2 is 29.

- Pursuant to § 1B1.2(d) and § 3D1.4, the highest offense level is 29 for Group 2, which constitutes one unit.  As the offense level for Group 1 is four levels less than level 29 (for Group 2), it is assigned one unit.  The total

4

amount of units is two, which results in two additional offense levels, pursuant to § 3D1.4.     Therefore, the combined offense is 31.

- Assuming the defendant pleads guilty and allocutes to the satisfaction of the Court in a timely manner, thereby demonstrating acceptance of responsibility for his offense, permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently, a three-level decrease is warranted, pursuant to § 3E1.1(a) and (b).

- In accordance with the above, the applicable Guidelines offense level is 28.

- Based upon information available to the U.S. Attorney's Office (including representations by the defense), the defendant has no criminal history points, which places him in Criminal History Category I.

- Based on the calculations set forth above, the defendant's Stipulated Sentencing Guidelines range is 78 to 97 months' imprisonment.

- The fine range is $12,500 to $125,000.

- The parties agree that neither a downward nor an upward departure from the Stipulated Sentencing Guidelines range is warranted. The parties further agree that a sentence within the Stipulated Guidelines range would constitute a reasonable sentence in light of the factors set forth in 18 USC 3553(a).  However, the parties agree that either party may seek a sentence outside of the Stipulated Guidelines range and suggest the same to the Court or the probation office.

- The defendant agrees to make restitution in an amount to be specified by the Court, pursuant to 18 USC 3663, 3663A, and 3664.

Celado's sentencing is currently scheduled for October 3, 2011.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed —

  (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B)  to afford adequate deterrence to criminal conduct;

  (C)  to protect the public from further crimes of the defendant; and

  (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the kinds of sentence and the sentencing range established for —

  (A)  the applicable category of offense committed

> by the applicable category of defendant as
> set forth in the guidelines . . .;

(5)   any pertinent policy statement . . . [issued
      by the Sentencing Commission];

(6)   the need to avoid unwarranted sentence
      disparities among defendants with similar
      records who have been found guilty of
      similar conduct; and

(7)   the need to provide restitution to any victims of
      the offense.

18 U.S.C. § 3553(a).   A sentencing judge is permitted to find
all the facts appropriate for determining a sentence, whether
that sentence is a so-called Guidelines sentence or not.   See
Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the
Presentence Investigation Report ("PSR") with respect to
Celado's personal and family history.

**The Offense Conduct**

The following description draws from the PSR.   The
specific facts of the underlying conduct are adopted as set

forth in that report.

From at least October 2005 through October 2006, several individuals, including Celado, Robles, and Rodriguez, comprised a loosely knit group that committed armed robberies of business establishments in New York City.   Radio Shack stores were a particular target of this group since Celado and Robles worked for Radio Shack either prior to, or during the course of, the robberies.   There was no known leadership structure within the group.   It appears that various individuals got together to participate in certain robberies.   The following robberies only pertain to those involving Celado.

### October 15, 2005, Robbery of Radio Shack

Some time prior to mid-October 2005, Celado, Robles, and at least one co-conspirator ("CC-1") discussed robbing a Radio Shack store located at 220 East 161st Street in the Bronx, NY ("Radio Shack Store-1").   As Celado was an employee of this store, he provided insight concerning the store's operation and procedures.

On October 15, 2005, at approximately 7:57 p.m., while

8

four employees of Radio Shack Store-1, including Celado, were preparing to close the store for the business day, Robles and CC-1 entered the store.  They brandished firearms and ordered the employees to the ground.  One of the robbers kicked two of the employees in the shoulder and back.  Robles or CC-1 then ordered Celado to empty the store's register of all its cash. Celado subsequently handed approximately $4,500 in cash to the robbers before they fled the area.  Celado pretended to be a victim throughout the robbery and while providing a statement to the investigating NYPD officers.

<u>November 15, 2005, Robbery of Radio Shack</u>

On November 15, 2005, at approximately 8:55 p.m., Robles and CC-1 entered a Radio Shack store located at 2476 Grand Concourse in the Bronx, NY ("Radio Shack Store-2").  At the time, there were three employees in the store.  Robles and CC-1 brandished firearms, and they ordered the employees to the back of the store, where they duct-taped their hands and eyes. The employees stated that after their eyes were taped, they heard additional individuals in the store; the investigation determined that Celado was one of the participants who entered the store after the employees' eyes were taped shut.  The

robbers stole more than 500 cell phones and other merchandise valued at approximately $100,000. They also stole personal property from the employees, including $52 in cash, a Kenneth Cole watch, a bank debit card, a New York State learner's permit, a NYS driver's license, and a student ID card from Lehman College.

On October 14, 2008, Robles was arrested by NYPD detectives, and Celado and Rodriguez were arrested on February 25, 2010.

**The Relevant Statutory Provisions**

For Count 1, pursuant to 18 U.S.C. § 1951, the maximum term of imprisonment is 20 years.

If a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than 3 years, pursuant to 18 U.S.C. §§ 3583(b)(2).

The Defendant is eligible for not less than 1 nor more than 5 years' probation by statute, pursuant to 18 U.S.C. § 3561(c)(1).

10

The maximum fine that may be imposed is $25,000, pursuant to 18 U.S.C. § 3571.

Full restitution to the victims is required under 18 U.S.C. § 3663A & 3664.

A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2010 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a).   The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

Since the Defendant was named in two of the three robbery acts outlined in Count 1, each of these robberies comprise its own separate group for Guideline calculation

11

purposes, pursuant to § 1B1.2(d) and § 3D1.2.

Group 1: October 15, 2005 Robbery.  The Guideline for the violation of 18 U.S.C. § 1951 is found in § 2B3.1, which provides for a base offense level of 20, pursuant to § 2B3.1(a). Since a firearm was brandished during the course of the robbery, pursuant to § 2B3.1(b)(2)(C), a five-level increase is warranted.  Accordingly, the adjusted offense level for Group 1 is 25.

Group 2: November 15, 2005 Robbery.  The Guideline for the violation of 18 U.S.C. § 1951 is found in § 2B3.1, which provides for a base offense level of 20, pursuant to § 2B3.1(a). Since a firearm was brandished during the course of the robbery, pursuant to § 2B3.1(b)(2)(C), a five-level increase is warranted.  Since a victim was restrained to facilitate the commission of the robbery, pursuant to § 2B3.1(b)(4)(B), a two-level increase is warranted.  Because the robbery caused a loss of more than $50,000 but not more than $250,000, pursuant to § 2B3.1(b)(7)(C), a two-level increase is warranted.  Accordingly, the adjusted offense level for Group 2 is 29.

Pursuant to § 3D1.4, the combined multiple count

adjusted offense level is 31, representing a two-level increase from the greater of the adjusted offense levels for each group.

Based on the Defendant's written statement and his plea allocution, Celado has shown recognition of his responsibility for the offense.   Pursuant to § 3E1.1(a), the offense is reduced two levels.   Furthermore, an additional one-level reduction is warranted, pursuant to § 3E1.1(b), because Defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Accordingly, the applicable offense level is 28.

The Defendant has no known criminal convictions and therefore has zero criminal history points.   A total of zero criminal history points establishes a Criminal History Category of I, pursuant to the table at Chapter 5, Part A, of the Guidelines.

Based on a total offense level of 28 and a Criminal History Category of I, the Guidelines range for imprisonment is

78 to 97 months.

The Guideline range for a term of supervised release is at least 2 years but not more than 3 years, pursuant to § 5D1.2(a)(2).

Defendant is not eligible for probation because the applicable Guideline range is in Zone D of the Sentencing Table, pursuant to § 5B1.1 Application Note #2.

The fine range for the instant offense is from $12,500 to $125,000, pursuant to § 5E1.2(c)(3)(A) & (B). Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,270.93 to be used for imprisonment, a monthly cost of $317.32 for supervision, and a monthly cost of $2,063.19 for community confinement.

Pursuant to § 5E1.1(a)(1), in case of an identifiable victim, the Court shall enter a restitution order for the full

14

amount of the victim's loss if such order is authorized under 18 U.S.C. § 3663A.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is concluded that a downward departure from the Guidelines sentence is warranted in the instant case.

Under 18 U.S.C. § 3553(a)(1), the Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant." Pursuant to 18 U.S.C. § 3553

15

(a)(2)(A), the Court weighs the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.   Under 18 U.S.C. § 3553 (a)(2)(B) & (C), the Court considers the need for the sentence imposed to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant.

Celado was 23 at the time of the first robbery andis currently 28 years of age.   He is married, the father of two children, ages 7 and 2, and appears to be an attentive father and husband.   According to the PSR, the Defendant has a stable residence and family support network.   The Defendant has no known criminal history or prior conditions, including in the multi-year span between these offenses and his instant arrest. During the course of the present crime, Celado did not personally brandish a weapon or tie up the Radio Shack employees.   In addition, according to the submissions of his attorney, following his arrest in February, 2010, Celado enrolled in Bronx Community College and is taking courses toward a degree in health education and in August, 2011, he was hired as an Asset Protection Manager at BJ's Wholesale Club in West Nyack, New York.   Celado's counsel states that he is currently

16

twelve credits shy of qualifying for admission as a junior in a bachelor's degree program.  Celado appears dedicated to his rehabilitation, and his behavior on pretrial release has been commendable.  According to the PSR, Celado poses a low risk of recidivism.  This is particularly the case as his rehabilitation appears largely self-motivated.

In light of the nature and circumstances of the offense and the history and characteristics of the Defendant, the need for the sentence to provide just punishment for the offense and afford adequate deterrence to criminal conduct and protect the public from the Defendant's further crimes, the Court finds that a downward departure from the Guideline sentence is appropriate to impose a sentence "sufficient, but not greater than necessary" under 18 U.S.C. § 3553(a).

**The Sentence**

For the instant offense, Celado will be sentenced to 36 months' imprisonment and 2 years' supervised release.

Celado is directed to report to the nearest United States Probation Office within seventy-two hours of release to

17

commence his term of supervised release.  It is recommended that Defendant be supervised by the district of his residence.

As mandatory conditions of his supervised release, Celado shall:  (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer.  The Defendant shall refrain from any unlawful use of a controlled substance and shall submit to one drug testing within fifteen (15) days of placement on probation or supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1)  Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found.  The search must be

18

conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

(2) Defendant shall provide the probation officer with access to any requested financial information.

(3) Defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless Defendant is in compliance with the installment payment schedule.

(4) Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

The Court finds that the victims have suffered injuries compensable under the Victim and Witness Protection Act, including Radio Shack and several of its employees. The Government shall furnish information concerning restitution, including the names of all of the victims, their corresponding loss amounts and their contact information, at the time of the Defendant's sentencing. If this information is not available at

19

the time of sentencing, the Court will set a date for the final determination of the victims' losses not more than 90 days after sentencing, pursuant to 18 U.S.C. § 3664(d)(5). Any restitution payments should be addressed to the Clerk of Court and should list the Defendant's name and his corresponding docket number. The Clerk of Court shall then forward any restitution payments to the victims. Contact information for Radio Shack is available and is listed below:

> Radio Shack Loss Prevention
> 300 Radio Shack Circle, Suite CF4-334
> Fort Worth, TX 76102
>
> Contact Person:   Scott   Camerata,   Regional   Loss
> Prevention Manager for New York Metro Area, (201) 556-
> 8210; scott.camerata@radioshack.com

It is ordered that the Defendant make restitution to such persons, except that no further payment shall be required after the sum of the amounts actually paid by all defendants has fully covered all of the compensable injuries. Any payment made by the Defendant shall be divided among the persons named in proportion to their compensable injuries.

If the Defendant is engaged in a BOP non-UNICOR work program, the defendant shall pay $25 per quarter toward the

20

criminal financial penalties. However, if the Defendant participates in the BOP's UNICOR program as a grade 1 through 4, the Defendant shall pay 50% of his monthly UNICOR earnings toward the criminal financial penalties, consistent with BOP regulations at 28 C.F.R. 545.11.

The remaining restitution balance, following the Defendant's release from imprisonment, shall be paid in monthly installments of 15% of gross monthly income over a period of supervision to commence 30 days after the date of the judgment or the release from custody if imprisonment is imposed.

The Defendant shall notify the United States Attorney for this district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), including the amount of the restitution owed in this case, it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

A special assessment of $100, payable to the United

21

States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification
at the sentencing hearing scheduled for October 3, 2011.

It is so ordered.

New York, NY
September 2.5 , 2011

ROBERT W. SWEET
U.S.D.J.